# THOMAS F. CRAVEN v. A. J. SKOBBA.[1]

## June 11, 1909.

## Nos. 16,217—(109).

**Landlord and Tenant — Agreement to Repair.**

Where a lessor agrees by the terms of his lease to make certain specific repairs upon the leased premises within a time extending beyond the commencement of the tenancy, the lessee does not waive the agreement to repair by entering into possession before they are made.

**Breach of Agreement to Repair.**

The rights and liabilities of the parties to a written lease are measured by their engagements therein expressed. A violation of the agreement by the lessor to make certain repairs upon the premises is none the less a breach of the contract because his failure to repair did not materially lessen the enjoyment of the premises by the lessee.

**Trial — Refusal to Accept Verdict.**

When the jury returns a verdict which is not justified in any view of the evidence and law of the case as embodied in its instructions, the court may refuse to accept it and require the jury to return and report a proper verdict.

**Verdict Sustained by Evidence.**

Certain question of fact *held* properly submitted to the jury, that the evidence sustains their verdict, and that the record presents no reversible error.

Action in the municipal court of Minneapolis to recover $341.22 for the alleged breach of a lease. The case was tried before Waite, J., and a jury which returned a verdict in favor of plaintiff for $12.12. From an order denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial, he appealed. Affirmed.

*P. M. Burns* and *W. C. Odell,* for appellant.

*Arctander, Johnson & Berg,* for respondent.

BROWN, J.

Action for damages for the alleged breach of certain conditions

[1] Reported in 121 N. W. 625.

of a lease, in which plaintiff had a verdict, and subsequently moved for, and appealed from an order denying, a new trial.

The facts are substantially as follows: Plaintiff was the owner of a residence property situated in Minneapolis, and on August 24, 1907, leased the same to the defendant for the term of one year from and after the first day of September following, at an agreed rent of $40 per month. The lease was in the usual form of such instruments, and contained, among other things, the following stipulation or condition, namely: "And the lessor specifically agrees and covenants with the lessee that he will do the following repairs on said premises: Paint the kitchen and pantry, paint dado in dining room and clean the ceiling, calcimine walls in parlor and library and hall, retouch ceilings and border in parlor and library room, and paint the house on the outside. That these repairs are to be done at once, or within a reasonable time." The repairs provided for by this stipulation were all made, except painting the house on the outside, before September 9, 1907, at which time defendant took possession of and moved into the house with his family. Plaintiff failed to have the house painted, and on October 14, over a month after taking possession, defendant demanded in writing that the condition of the lease in this respect be complied with, and notified plaintiff that unless painting operations were commenced before October 21 following he would treat the lease as terminated and vacate the premises. In the same demand and notice defendant insisted that other repairs be made which were not provided for by the lease. In response to this demand, plaintiff replied with some criticisms of defendant's manner of using the premises, and recognized his obligation at that time to paint the house, stating that he would do so as soon as possible. His recognition of the obligation to paint was contained in the following extract from his letter:

"I have employed a man to paint that house on the outside, and it will be done just as soon as that man can possibly get to it. I shall keep my contract with you to the letter, and I shall expect the same of you."

The house was not painted, and defendant vacated on the ninth day of November, surrendering the key thereof to plaintiff's agent. Plaintiff was thereafter unable to rent the premises until May 1,

1908, and then at a reduced rent. He brought this action for the loss suffered in the premises, for injuries to the property alleged to have been caused by defendant while in possession, and damages in other respects. The defense was, first, a breach of plaintiff's contract to paint the house; and, second, a surrender of the premises and an acceptance thereof by plaintiff.

1. It is contended by plaintiff, in support of his claim that he was entitled to an instructed verdict, and consequently judgment notwithstanding the verdict in this court, that defendant waived the failure of plaintiff to paint the house by taking possession thereof, knowing that the work had not been done, and, further, that defendant's abandonment of the premises was for the reason that plaintiff refused to make repairs not stipulated for in the lease, and not because the painting was not completed, and that he cannot, therefore, now rely upon the breach of the contract in that respect. The position cannot be sustained. The lease was executed by the parties on the twenty-fourth day of August for the term of one year, commencing the first day of September following. It contained the stipulation respecting the repairs, including the outside painting, and that this work should be completed "within a reasonable time." Defendant took possession on the ninth day of September. A fair construction of this contract leaves it reasonably clear that the parties contemplated that defendant would or might take possession of the premises before the repairs were made. The term of tenancy commenced within a week after the contract was entered into, and it would be unreasonable to suppose that defendant was to commence paying rent at that time and have no use of the premises. And, again, a reasonable time would not elapse between the date of making the contract, August 24, and the commencement of the tenancy, September 1, and the case comes within the rule that where the landlord agrees to repair before a certain day, which does not arrive until after the term of tenancy begins, an entry by the tenant does not operate as a waiver. Wood, Landlord & Tenant, 382; 24 Cyc. 1085, et seq., and cases cited.

Defendant insisted in October that this work be commenced and completed, and gave notice that unless plaintiff performed his agree-

ment on this subject the premises would be vacated. This plaintiff recognized defendant's right to demand, but he wholly failed to have the work done. At the time the demand was made upon him he informed defendant that he had employed "a man" to do the work, and that the man would complete it as soon as he could turn his attention to it. Defendant had the unquestioned right to insist that the work be done within a reasonable time after the date of the contract, and was not required to await the pleasure of a particular painter. Plaintiff was required by his contract to proceed with diligence, not in the employment of a particular workman, but to see that the work was commenced and completed. The trial court rightly submitted this question to the jury, and their finding that the painting was not done within a reasonable time should not be disturbed. Defendant, therefore, not having waived his right to insist upon the painting, was justified in vacating the premises and surrendering the lease.

2. The demand made by defendant that plaintiff proceed and paint the house was coupled with a demand that other improvements not included in plaintiff's agreement for repairs be also made; and it is urged that it conclusively appears that he vacated the premises because those repairs were not made. This question was properly submitted to the jury. The mere fact that defendant made an excessive demand for repairs would not preclude him from urging a breach of the contract in respect to which he had an unquestioned right. Plaintiff was not thereby put in default as to the repairs not provided for by the contract, but he was in default respecting the painting which he expressly covenanted to do. It is not important whether the failure to paint the house did or did not materially lessen the enjoyment thereof. It was expressly agreed between the parties that the painting should be done, and their respective rights and liabilities are measured by the terms of their written contract, and not by the consequences resulting from a breach thereof. Piper v. Fletcher, 115 Iowa, 263, 88 N. W. 380; Barnes v. Strohecker, 17 Ga. 340; Clarke v. Spaulding, 20 N. H. 313; Rogers v. Babcock, 139 Mich. 94, 102 N. W. 636; 18 Am. & Eng. (2d Ed.) 230.

3. Defendant offered evidence on the trial tending to show an agreement with plaintiff's agent, subsequent to the execution of the

lease, to the effect that defendant's act in taking possession of the premises should not be treated as a waiver of his right to insist that the painting be done. Of this plaintiff complains. We discover no error here. There was evidence of the agency of Burns, with whom defendant claimed to have made this subsequent arrangement, sufficient to take, not only that question, but also the question whether the subsequent agreement was made in fact, to the jury, and there was no error in submitting it to them. The evidence did not tend to contradict or impeach the written contract, for it was competent for the parties to modify the writing by subsequent agreement. Van Santvoord v. Smith, 79 Minn. 316, 82 N. W. 642; 24 Cyc. 912. If a consideration was necessary to support the new agreement, it is found in the waiver by defendant of the valuable right to have the repairs made before taking possession.

4. Plaintiff also complains because the court submitted to the jury the question whether the plaintiff, through his agent, accepted a surrender of the premises. It was the claim of defendant that, because of the failure of plaintiff to comply with the contract, he vacated the premises and surrendered the same to this agent, who duly accepted the same. Plaintiff insists that the person to whom surrender was made had no authority to act for him, and, further, that there was in fact no acceptance of the surrender. Both these questions were, under the evidence, for the jury, and we discover no reason for disturbing their conclusion thereon.

5. The jury, after having deliberated for some time, returned into court and reported a verdict for plaintiff for the sum of $80. This the court refused to accept, for the reason that it was not proper in any view of the case, and wholly in conflict with its instructions. Further instructions were then given, and the jury retired for further deliberations, after which they returned a verdict in favor of plaintiff for $12, which the court accepted. There was no error in the proceedings of the court on this subject. A court has the undoubted right to refuse to accept a verdict which is not in accord with the law and evidence by which the rights of the parties are to be determined. Such was this case. Under no proper view could plaintiff have a recovery of $80, and the trial court rightly required the jury to

conform their verdict to the facts before them.   Jaspers v. Lano, 17 Minn. 273 (296); 22 Enc. Pl. & Pr. (1st Ed.) 968.

6. A large number of errors are assigned respecting the charge of the court to the jury, and in other respects, none of which present reversible error.  The case was fairly submitted to the jury, and every issue fully presented to them by the court, including all special requests of plaintiff, in so far as proper to be given.  It is entirely immaterial what motive prompted defendant to take advantage of plaintiff's breach of his contract to repair.  That there was a breach the evidence fully shows and the jury found, and defendant, not having waived it, is not precluded from insisting upon his rights simply because he may have been prompted to do so for some additional disclosed or undisclosed reason.

Finding no error in the record, the order appealed from is affirmed.