## ALMA E. MALMQUIST AND OTHERS v. CAROLINE PETERSON AND ANOTHER.[1]

June 3, 1921.

No. 22,294.

**Vendor and purchaser — option contract — waiver of default.**

A provision in an option contract for the sale of land, requiring the option to be exercised within a specified time, may be waived. Waiver does not necessarily rest on contract. It, after default in performance of a contract within the time stipulated, the party entitled to take advantage of the default, with knowledge of the facts, treats the contract as still in force, or deals with the other party in a manner consistent only with a purpose on his part to regard the contract as still subsisting and not terminated by the default, he waives the default.

Action of ejectment in the district court for Hennepin county and to recover $1,428 for rent of the premises. The case was tried before

[1]Reported in 183 N. W. 138.

Hale, J., who made findings as set out in the opinion and ordered plaintiffs to convey the premises to Caroline Peterson within 30 days, upon payment to plaintiffs of $575.03, and that if plaintiffs should refuse proper conveyance by quitclaim deed, then the judgment should stand as a conveyance of the property. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*Charles E. Smith* and *Thompson, Hessian & Fletcher,* for appellants.
*Phil. T. Megaarden* and *Edward Chalgren,* for respondents.

HALLAM, J.

In March, 1909, defendant Caroline Peterson owned a lot in Minneapolis on which was situated a two-story duplex dwelling. It was encumbered by a mortgage which had been foreclosed by sale made some six months before and also by a second mortgage to Lydia K. Carlson. The aggregate of these encumbrances was over $2,000. Defendants were unable to redeem from the foreclosure sale or to pay the second mortgage, and their friend John B. Johnson came to their rescue. The Petersons gave to Johnson a quitclaim deed of the property, the deed expressing a consideration of one dollar, and Johnson executed a written agreement, reciting this deed, reciting that the deed was given "in consideration of a mortgage which they owed me on said place, which I have agreed to satisfy and to satisfy and pay all other encumbrances against said property," and that "it is my intention to make certain improvements and alterations in the buildings on said premises in the next few months" and then containing the following language:

"Therefore, it being understood that said Caroline Peterson desires to buy the said property back again,

"Now, therefore, in consideration of said conveyance I do hereby agree with them;

"That if at any time within three months from this date they want to buy said property back, that I will sell it to them at a price which will amount to the total amount expended by me on said property up to such time in addition to the amount now owing me on said mortgage, and the amount of other mortgages, taxes and incumbrances which I may have to pay on said property, and in addition thereto the amount of six per

cent interest on the amounts so paid by me from the time I have to pay them and six per cent interest on what they are now owing me.

"All to be computed as aforesaid into a lump sum to be used as the purchase price. And I agree to sell it to them for such price on a regular sale contract by their paying down $25 or more and then $25 or more per month on the contract. Deferred payments to bear interest at the rate of six per cent per annum, payable semiannually. This agreement hereby made is to be considered an option only, and to be absolutely terminated if not taken up by the time stated."

Pursuant to said agreement Johnson procured an assignment of the sheriff's certificate of the foreclosure sale mentioned, and an assignment of the Carlson mortgage. Defendants were, at the time of this transaction, occuping the lower apartment of said house. After completion of the transaction they moved upstairs and have ever since occupied the upper apartment without payment of rent. They paid taxes on the whole property down to the time of Johnson's death, which occurred in September, 1917, paid the water meter tax on both apartments, and from time to time made repairs and improvements upon the premises, amounting in all to about $600, and from time to time over this period of years paid to Johnson on said contract various sums, aggregating $665. During all this period Johnson and his successors in interest have collected rent from the lower apartment. The amounts received from the sources mentioned have been sufficient to pay the interest on the money advanced by Johnson and to reduce the principal to $575.03. The premises are of the reasonable value of $4,000.

After Johnson's death, plaintiffs, who are his heirs, commenced this action to eject defendants from the premises and to collect rent from May, 1909, amounting to $1,428. Defendants answered, offering to pay the sum of $575.03 alleged to be due under the contract, and asking for a decree of conveyance of the premises on payment of said sum with interest. The court found that it was the intention of Johnson and defendants to at all times continue said contract in force; that Johnson waived the provisions of the contract with reference to repayment within these months of the sums so agreed to be paid, and that accordingly the contract had not expired and the option thereby created had not terminated, and ordered judgment that if defendant shall pay the bal-

149 M.—15.

ance due within 30 days after entry of judgment, they shall be entitled to a conveyance of the property. Plaintiffs appeal.

We are of the opinion that the trial court was right. Undoubtedly Johnson could waive the provision requiring the option to be exercised within three months. If he waived the time requirement, then the option might be exercised after the time expired. Whether he did waive the time requirement is the important question in the case. We think the evidence clearly sustains the court's finding that he did do so. The repeated receipt of payments on the purchase price after the three months expired, together with acquiescence in defendants' possession, and in their making valuable improvements and repairs and in their payment of taxes and charges year after year, together with certain admissions of Johnson himself recognizing the continued interest of the Petersons in the property, leave no room for any conclusion other than that reached by the trial court.

Plaintiffs argue that there could not be an extension of the option without a new consideration. No doubt a contract for an extension, like any other contract, in order to be binding, must be supported by a consideration. We do not wish to be understood as holding that no consideration has been shown, but prefer to place our decision on the ground that waiver does not necessarily rest on contract. "Where by the course of conduct of one party to a contract, entitled to the performance of certain terms or conditions thereof, the other party has been led to believe, as a man of average intelligence, that such performance will not be required, until it has become too late to perform, or until to insist upon performance would work material injustice, the person who has so conducted himself is barred from asserting the right he had." Bigelow, Estoppel (6th ed.) p. 717.

This court has held that, if, after default in performance of a contract within the time stipulated, the party entitled to take advantage of the default, with knowledge of the facts, treats the contract as still in force or deals with the other party in a manner consistent only with a purpose on his part to regard the contract as still subsisting and not terminated by the default, he waives the default. In such event, strict performance according to the terms of the contract having been waived, a reasonable time and opportunity should be allowed to the

vendee in which to make payment. Quinn v. Olson, 34 Minn. 422, 26 N. W. 230. The facts of this case bring it well within the rule of the case cited, and we reaffirm it and apply it.

Order affirmed.